Good morning, your honors. My name is James Devereaux, and I represent the appellant in this appeal, Platt Electrical Supply Company. This case is, the central question in this case has to do with when the plaintiff, Platt Electrical, was on notice that gave rise to a duty of inquiry as to its claims against the defendant, Underwriters Labs. This is a fraud case. The gist of the plaintiff's claims against Underwriters Labs is that Underwriters had knowledge. After gaining that knowledge, withheld it, and as a result of that deceitful conduct, Platt sustained injuries. The crucial question is, when was Platt on notice such that it had a duty of inquiry as to its deceit claims against UL? The trial court focused on 1999, and in fact made the ruling that 1999 was the time when Platt was on such notice, and with all due respect to the trial court, I suggest that is an incorrect decision. In 1999, what occurred was the CPSC recalled cadet heaters that Platt was distributing, based on the fact that those heaters were listed with UL's mark. It is certainly true that in 1999, Platt and UL and the rest of the world had noticed that the cadet heaters were defective, but that has nothing to do with whether Platt was on notice as to the fact that UL discovered, as it turns out, sometime in 1988, that the cadet heaters were failing in the field after purchase and installation, and were causing fires and serious injuries. The fact is that only in late 2001 did Platt have any idea that UL had known of those facts since 1988, and concealed those facts, failed to disclose them, and continued to list the heaters for some 11 years between 1988 and 1999. The whole gist of this action is the fact that Platt relied on UL's mark, its listing of cadet heaters, as meeting its safety standards, and continued to distribute those heaters for that 11-year period until 1999, without having any idea that UL was aware of the fact that the heaters were hazardous and decided to keep it a secret. The crucial question in a non-disclosure case such as this is, when did the plaintiff have any reason to suspect that the defendant had the crucial knowledge and failed to disclose it? And the complaint in this case clearly alleges that it was only during the course of a class action lawsuit in the state of Washington, where Platt was a defendant, during discovery in that action, Platt found out for the first time, through information provided to it from a former employee of Underwriters Laboratories, that UL discovered in 1988 that the heaters were defective and made the decision to continue to list those heaters, and to not disclose to the public that there were these problems with it. In fact, one of the functions of UL, in addition to testing products when they're new, is to investigate complaints about products after they've been placed into the field, and UL has a department that does this investigation, and in fact did an investigation and learned of the problems with the cadet heaters during the late 1980s and throughout the 1990s, and kept it a secret. Part of the UL process is, when it discovers problems like that, to delist the product and no longer authorize the use of its mark. In this case, UL, notwithstanding the fact that it was aware of the serious hazardous propensities of these heaters, did not delist the product and continued to authorize their mark to be used until the CPSC recall in 1999. It may not be technically key on the notice issue, but what motive does an organization like UL have to engage in deceitful conduct? Well, I would guess profit. They continue to charge money to the manufacturers whose products they list and allow them to use their mark, and for 11 years, presumably UL continued to earn substantial funds from cadet in not delisting these heaters. Now, on the notice issue, would I be off the mark if I said that it seems like the heart of the issue before us is whether Platt had to have notice just that the heaters were defective or if they had to have notice of deceitful conduct? Oh, I think that's exactly right. I think that it is not sufficient for the nature of the cause of action that Platt has asserted in his complaint for it to simply have known of the defective condition of the Platt heaters, the hazardous propensities of those heaters. But what is crucial is that for Platt to file a lawsuit against Underwriters Laboratories based on this deceit cause of action, it was essential that they be aware of the fact that Underwriters Laboratories did in fact engage in deceitful conduct, that it knew material facts, that it knew that distributors such as Platt were relying on their mark, and it concealed that information. That is a crucial element of a fraudulent concealment cause of action. And there's nothing in this case that would indicate that prior to 2001, Platt had any reason to suspect that that kind of deceitful conduct had been engaged in by Underwriters Laboratories. In fact, had Platt filed this lawsuit against Underwriters Laboratories in 1989, I expect the lawsuit would have been dismissed because they would not have had any factual basis at that point to assert this cause of action and quite possibly would have had sanctions imposed on them for filing a lawsuit without the factual basis for doing so in 1989, as distinguished from 2001. Also, I've covered this in my brief and I don't want to overly belabor the point, but the controlling law here is that law that has been pronounced by the California Supreme Court with respect to how the discovery rule is to be applied in California under circumstances like these. And the most recent and very well articulated opinion of the Supreme Court is the Fox versus Ethicon case that I discuss extensively in my brief. And another, I think, key California opinion that's very relevant is a court of appeal opinion in the Vega case, which I also cited because they both talk specifically – well, Fox talks specifically about California law as it relates to the discovery rule in terms of the statute of limitations, and Vega talks about the law of the elements of a fraudulent concealment cause of action. A further very, very important aspect of this case is that in opposing the two motions – Your Honor, would you excuse me for a minute? I'm getting over the flu and my mouth is very dry. I just need to get a little water. Pause. You could pause this clock. Thank you very much. I apologize for that. We'll start your clock again. Oh, thank you. Platt specifically requested in opposing the motions to dismiss in this case that if the district judge was inclined to dismiss, to find that there were pleading defects, that Platt be given the opportunity to amend the complaint to more fully that it did not know about at the time, even at the time this complaint was filed, but learned during the course of discovery of this lawsuit, learning facts in addition to those that it had discovered in 2001 in the Washington action, Platt has not ever in this case had the opportunity to amend its complaint. And as I indicated in our brief, we believe that granting the motions in this case and not granting Platt the opportunity to amend its complaint is error. Specifically, at argument in the last motion in this case in 2005, Platt at the very end of the argument before the judge renewed orally its request that it be allowed to amend the complaint. And when the decision came down, there was no mention whatever of the request to amend. And I suggest that at the very least, before Platt is thrown out of court and not allowed to pursue this cause of action at all, that it be given the opportunity, if necessary, to amend the complaint to set forth more fully these allegations about UL's knowledge and its deceitful conduct before Platt is denied the opportunity altogether to proceed with its cause of action, at least to get it to a trier of fact, to have a determination made as to what the facts really are in this case. I think what I'd like to do is reserve the balance of my time for rebuttal after I've had the opportunity to hear what Mr. Abernathy has to say in his behalf, unless you have some further questions. But let's do that. Thank you. And Mr. Abernathy. Your Honors, may it please the Court. Michael Abernathy on behalf of Underwriters Laboratories. Counsel started his argument with this issue. In order for a cause of action of deceit to accrue, is it essential that the plaintiff be aware that the defendant engaged in deceitful conduct? The Ninth Circuit in the Solomon case answered that question directly. And there the Court said the plaintiff need not be aware of the deceitful conduct. In that case, in the Solomon case, the plaintiff alleged that the tobacco companies had engaged in a long, long period of fraudulent concealment. And the argument was because Solomon was not aware of the fraud, the cause of action could not accrue. The Ninth Circuit, looking at California law, said that is the wrong legal standard for accrual under California law. According to the Court, the standard is simply, did the plaintiff at least suspect that someone had done something wrong to him? And I would submit, Your Honors, in this case, with the complaint that Platt had filed, there were abundant admissions in that complaint that Platt should have been aware that, in this case, UL allegedly did something wrong. So what are those facts? The complaint admits that Platt purchased these heaters relying upon the UL mark. The complaint admits that as of January 14, 1999, Platt was aware that the heaters were defective and was aware of that because it had knowledge of the CPSC recall. It knew that it had been injured in 1999 because it was engaged in litigation with the CPSC, class action litigation, and was incurring attorney's fees. So as of March 1999, it was aware that the UL mark was on the products, that according to its allegations, that the UL mark made a representation of safety, that that representation was not correct because the CPSC had publicly accused the products of being substantially defective. It knew it had relied upon the UL mark, and it knew that it had suffered damages. So under the Solomon decision, did Platt have a reason to suspect that UL had done something wrong based on the allegations of the complaint, the admissions that must be accepted as true? The answer is yes. Let me ask you a question about Solomon. Is that a case where the deceit claim was that the tobacco companies had not disclosed addictiveness of nicotine? Yes, Your Honor. Okay. So I could be mistaken in this, but I seem to recall that part of the Court's opinion that this was a known the harmfulness of nicotine was known, and that that may have affected the reasoning. So does that provide a rule of decision that would be applicable here? I believe it does, Your Honor, because the central point of inquiry should be, in 1999, what was publicly known. Just like in the Solomon case, at the time that cause of action allegedly accrued, at the time that litigation should have been filed, what was publicly known? And in 1999, the plaintiff here, Platt, agrees that it was aware that the heaters were defective, that it had relied upon the UL mark, and that it knew the UL mark was a designation of safety. So as of 1999, it was aware and it was publicly known, very widespread publicly known, that these heaters were defective and that they were certified by UL. So this was not a situation, as in some of the California cases, where there's limited knowledge about the problem, either in an obscure press piece or in some sort of public filing. This was widely disseminated, and there is no dispute that Platt was aware of these core allegations in 1999. So, Your Honor, I would answer your question to say that, as in Solomon, there was an issue here that was widely disseminated, publicly known, and admitted by Platt, and hence, it knew that it had been, or at least it suspected or should have been suspected, that widely reported and disseminated problem could have caused it injury. Now, counsel relies on the Fox decision and says that may change the Solomon analysis. Fox simply reaffirms the California discovery rule, and it clarifies the Nogaert decision. What Fox says is the elements of a cause of action should not be looked at in a hyper-technical way, but rather they ought to be looked at in a very commonsensical way in a lay person's understanding. And by elements, they mean the generic elements, wrongdoing, causation, and harm. And in this case, Platt should have known of wrongdoing. It was aware that the mark, according to its allegation, did not represent safety contrary to what it believed. Okay. Hold on. Hold on just one second, if I can inquire on that. So then it's your position that if Platt, as I understand it, if Platt is aware that UL was, let's say, negligent in saying a product is okay, when it was not, when it was defective, that you would characterize that as knowledge of wrongdoing? Yes, Your Honor. Okay. But it was not only one. But is there any case that supports that? I'm not saying that's incorrect, but do you have any case that says that's the right characterization of, you know, that wrongdoing covers simple knowledge like that? Yes, Your Honor. I would say Solomon.  And I think I know what Solomon says. So I know what I mean on the facts. A case with similar facts, a case with similar facts where knowledge of, let's say, negligent conduct is taken to be sufficient to be wrongdoing within the meaning of that principle. I would point, Your Honor, to the Nogar decision, the California Supreme Court case. That was a product liability case, but it was premised on issues of negligence. And there were also allegations in that case of fraud. So I think it's very similar to what we have in this case. So I would turn to the Nogar case in particular, and also I believe the Jolly case had similar factual patterns. And those cases are cited in your brief, right? I'm sorry, Your Honor? Are those cases cited in your brief? Yes, Your Honor. Both cases are, and both cases are California Supreme Court cases. So just to pile on for a minute here, this negligent misrepresentation, fraudulent concealment, isn't there an element of scienter in those kinds of causes of action that make this case a little bit different from the cases that you're referring us to? In terms of negligent misrepresentation, Your Honor, it is, again, a negligent action. And in terms of fraud, there clearly has to be scienter. But I would, again, refer to the Fox case and the Nogar case for the proposition that one need not know the underlying legal cause of action. One need not even know the particular elements of the cause of action. Under California law, it is sufficient if one understands or suspects that there has been harm, that there is causation, and that one has engaged in wrongdoing. So counsel asked the question, in 1999, what sort of action could they have filed? Well, in 1999, clearly they could have filed two of the counts that they filed in 2003, negligence and negligent misrepresentation. Okay. But could they have filed a claim of fraud or deceit or fraudulent concealment? In 1999? Right. I don't think so, Your Honor. But, again, I believe under California law, it really does not matter. What California law would ask is, did you have sufficient suspicions to put yourself on inquiry notice? They could have been. You're reading Solomon to mean that did you have sufficient knowledge to be on inquiry notice that you would have some kind of harm from some conduct that violated a duty to you? And if that's true, even if it was negligent conduct, that would start, in your view, the statute to run on a fraud claim. Yes, Your Honor. And I would point for support on that proposition, again, to the no-gout decision and then also to the Fox decision. And, Your Honor, in particular, I'm going to go back to that. And the language in Solomon. Yes, Your Honor. Of course. But in particular, this recent Fox decision, the California Supreme Court said specifically, rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs had reason to at least suspect that a type of wrongdoing had injured them. And under these facts, Platt should have suspected that UL's alleged misrepresentation of safety had injured them. They had the elements to raise a cause of action for negligence and negligent misrepresentation. And had they done so with initial disclosures and discovery, they would have been able to have filed a fraud action within the statute of limitations, period. So in my view, the law in California, as supported by the California Supreme Court, would say that in view of the admissions in the complaint, and in particular, the admissions in the complaint about UL's wrongdoing, Platt was on inquiry notice to take action. And here, Platt could have filed the two counts that were initially dismissed. It could have consulted with the CPSC. It could have consulted with other State government authorities. It could have consulted with UL. But it sat on its hands and waited until 2003. There's one other point, Your Honor, I'd like to raise, Your Honors, I'd like to raise in terms of what did Platt know in 1999. And that comes from page 14 of Platt's reply brief. Top of the page, Platt says, It may be fair to say, as did the district judge in this case, that once Platt learned that the heaters were defective and posed a safety hazard, it was on notice that UL's certification, and thus its representation of safety, was factually false. As Judge White found in his 2005 opinion, under California law, once one is aware that a representation is factually false, the statute of limitations on a fraud action begins to run. And Judge White relied on Brandon v. Gray for that proposition. And this quote on page 14 specifically meets the Brandon v. Gray standard. In 1999, as Platt now admits, it was aware that UL's representation was false. And hence, the statute of limitations began to run. Your Honor, I'd like to briefly address, or Your Honors, I'd like to briefly address the issue regarding the amended complaint. It's important to put this in context. In 19 — excuse me, in 2003, Platt was given the right and the ability to amend its complaint after the Court initially ruled on the motion to dismiss. It did not. Thereafter, the parties engaged in discovery, and discovery — that discovery was just about closed at the time UL moved to dismiss the remaining fraud count. Judge White, in deciding in 2005 to dismiss the fraud case, did not say that the fraud count was — would have been futile to amend it. What he did say, however, was, in light of all the admissions in the complaint regarding Platt's knowledge of UL's activities, that under any set of circumstances, Platt was on inquiry notice of the fraud. Counsel, I'd like to put a point to you. And if it's something you're not yet aware of, we'll let you file a supplemental brief. And your colleague, yesterday, I'm advised that the California Supreme Court, in a case where we had certified some questions, rejected Solomon or some aspect of Solomon. So does that — are you aware of that case? I was. If so, does it have any bearing here? Your Honor, I have not had an opportunity. I did not know that. I was aware of the referral to the California Supreme Court. Okay. Well, we'll do an order that would let both of you give us a supplemental brief on the implications, if any, of Grisham. But — so you don't have to address that now. Thank you, Your Honor. I would just — on that point, I would note that I believe the referral, the certification, to the California Supreme Court dealt with issues of rebuttable presumptions of knowledge of the hazards of tobacco under California law in view of various California statutes, as relied upon by Solomon. I was involved on the panel that made the certification. I can't remember the precise language, and I haven't read the opinion yet, so I'm not saying it has any bearing. I just don't know. But I know it addresses Solomon. Your Honor, I will conclude by simply saying that in view of the admissions of the complaint, and in particular the admissions that Flatt was aware that UL's misrepresentations in 1999 were allegedly false, confirmed by its admissions on page 14 of the reply brief, that Flatt was in a state where it should have been aware that UL had done something wrong, and hence, under California law, the cause of action accrued and the statute of limitations began to run. Thank you, Your Honor. Many thanks. Okay. I guess we have Mr. Devereaux again. Thank you, Your Honor. I was not aware of yesterday's action either, and will be grateful for the opportunity to address that. We'll put the citation in the order asking for your brief. Great. Thank you very much. Statute of limitation applies to a cause of action. The cause of action in this case is deceit. The Solomon case is a 19 – I'm sorry, is a 2002 case. The Fox case is a 2005 case. The law that controls here is the law that has been pronounced by the California Supreme Court, and setting aside for the moment whatever action the court may have taken yesterday, which we can both address at the appropriate time, the most recent articulation in terms of the discovery rule is the Fox case. The Solomon case is quite a different case from this case, and, in fact, so is Fox for that matter. But one thing that I would like to do since Mr. Abernathy quoted from Fox, I would like to do the same thing. And it's found at page 813 of the Fox opinion where the court said, If a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones the statute of limitations on the newly discovered claim. I think that's exactly the case here. Whatever Platt knew in 1999, it did not have any reason to suspect the knowledge that UL obtained in 1988 and continued to have and to withhold for the following 11 years. Sienter is indeed an element of a fraud cause of action, and I would like to suggest that it would not have been possible for Platt to have filed its fraudulent concealment cause of action in 1989. Thank you very much. Thank you, counsel. We appreciate and thank both counsel for their fine arguments. And Platt Electrical shall be submitted. So excuse me, wait one moment. We won't submit it now because we'd have to unsubmit it when we got the briefs. It shall be submitted after we receive the supplemental briefing. And normally we don't re-argue cases based on one new decision. So I'd say take your best shots in your written briefs, and we'll appreciate the help. Thank you. Thank you. Okay. The next case is George Villegas, if I'm pronouncing that correctly, versus Gilroy Garlic Festival Association et al. I didn't read that until the end of the argument. I saw that that was pretty significant. I'm very happy.
judges: Gould, Rawlinson, Covello